UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARC LAZARRE | HON. JULIEN X. NEALS, U.S.D.J.<br><br>Crim. No. 23-356 |

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO REVOKE ORDER OF DETENTION**

The United States of America submits this brief in response to Defendant Marc Lazarre's ("Defendant") motion to revoke an order of detention, as set forth in his October 4, 2023 submission. (Dkt. No. 68 or "Defendant's motion".) The Government respectfully submits that Defendant's motion should be denied, as his continued detention pending trial is warranted in light of the serious risk that Defendant will flee or obstruct justice, and there are no conditions or combination of conditions that could assure Defendant's appearance at future proceedings or the integrity of future proceedings.

**I.     BACKGROUND**

On October 18, 2022, Defendant was charged in a criminal complaint with one count of bank fraud, in violation of 18 U.S.C. § 1344, and one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A. (Dkt. No. 1.) On October 20, 2022, Defendant was arrested on these charges. During the initial

appearance, the Government moved to detain Defendant, pursuant to 18 U.S.C. § 3142(f), and Defendant contested the motion.  After hearing the arguments of counsel, the Honorable André M. Espinosa, United States Magistrate Judge, granted the Government's motion, finding that the Government established by a preponderance of the evidence that conditions Defendant proposed were insufficient to assure his appearance at future proceedings.  (Dkt. No. 7.)  In rendering his decision, Judge Espinosa did not at that time foreclose the possibility that a combination of conditions existed to ensure Defendant's future appearances, but acknowledged that the conditions that Defendant proposed did not provide the necessary assurances and remanded him to the custody of the United States Marshals Service.

On October 27, 2022, Defendant moved before Judge Espinosa to revoke his pretrial detention with conditions.  (Dkt. No. 10.)  On November 29, 2022, and following several hours of argument and deliberation, Judge Espinosa concluded that "the Government has met its burden and more to demonstrate that the defendant presents a serious risk of flight for which no condition or combination of conditions will assure his appearance at future proceedings." (Nov. 2022 Hr'g. Tr., attached as Exhibit 1 to Defendant's motion ("Def't's Ex. 1".) at 69:19-23.) In reaching this conclusion, Judge Espinosa relied on a "constellation of factors," and highlighted in particular:  (i) Defendant's conviction in connection with an unsuccessful attempt to elude law enforcement through the use of a false alias; (ii) that Defendant, at the time of his arrest, was living under a deceased victim's identity; and (iii) Defendant's statements at the

time of his arrest indicating his effort's to evade detection. (Def't's Ex. 1 at 66:10–69:23.)[1]

On May 3, 2023, the grand jury sitting in Newark, New Jersey returned an Indictment charging Defendant with conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349 (Count One), bank fraud, in violation of 18 U.S.C. § 1344 (Count Two), and three counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A (Counts Three through Five). The Indictment alleges that between September 2019 and October 2022, Defendant and his coconspirators obtained the personal identifiable information of numerous victims and used this information both to open various bogus accounts as well as to obtain funds from the victims' actual accounts.

On August 3, 2023, Defendant most recently petitioned the Court for release on conditions. In light of changes that Defendant made to his proposed bail package, Your Honor requested that Judge Espinosa consider the package in the first instance. On September 14, 2023, Judge Espinosa heard argument on Defendant's renewed application. In reaffirming his prior decision, Judge Espinosa went so far as to say that Defendant's recent conduct—namely, that Defendant repeatedly refused to comply with writs of habeas corpus ad prosequendum issued in connection with an ongoing New York criminal

---

[1] While Judge Espinosa found that the Government had met its burden with respect to the risk of flight that Defendant posed, Judge Espinosa expressed that detention was not warranted solely on the ground that he presented a risk of obstructing justice. (Def't's Ex. 1 at 69:24–70:6.)

proceeding—"enhance[d] any conclusion from the November 22nd bail hearing that [Defendant] cannot be relied upon if left to his own devices to appear at future proceedings in this matter." (Sep. 2023 Hr'g. Tr. ("Def't's Ex. 2") at 38:5-16.)

## II.   LEGAL STANDARD

A person ordered detained by a magistrate judge "may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b).  A court reviewing a detention order under Section 3145(b) must make a *de novo* assessment of whether bail is warranted. *United States v. Perry*, 788 F.2d 100, 107 (3d Cir. 1986); *United States v. Caba*, No. 88-435, 1989 WL 200447, at *2 (D.N.J. Feb. 14, 1989). A district court reviewing an order of detention may, but is not required to, hold a new evidentiary hearing on bail.  *United States v. Harry*, 2020 WL 1933990, at *2 (D.N.J. Apr. 22, 2020); *see also United States v. Mitan*, 2009 WL 604695, at *13 (E.D. Pa. Mar. 6, 2009).

Pre-trial release and detention are governed by the Bail Reform Act of 1984, codified in 18 U.S.C. §§ 3141–56.  Section 3142(f)(2) provides that the Government may seek to detain a defendant pending trial in situations where, as here, there is a "serious risk that [the defendant] will flee" or "a serious risk that [the defendant] will obstruct or attempt to obstruct justice." Section 3142(c), which governs the release of a defendant on conditions determined by the court reviewing the matter, directs courts to release a defendant "subject to the least restrictive . . . condition or combination of conditions" that a court "determines

4

will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* § 3142(c)(1)(B). Section 3142(g), in turn, provides several factors that a court must consider in making that determination, including "the nature and circumstances of the offense charged," "the weight of the evidence against the person," "the history and characteristics" of the defendant, including:

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

the "nature and seriousness of the danger to any person or the community that would be posed by the person's release."

The Government must prove by a "preponderance of the evidence" that there are no conditions that will reasonably assure defendant's attendance at trial. *United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986).

### III. ARGUMENT

**A. Defendant's Affirmative Deception to the Court and Law Enforcement and Failure to Appear in State Court Demonstrate by a Preponderance of the Evidence that No Condition or Combination of Conditions Will Reasonably Assure Defendant's Appearance at Future Proceedings.**

This Court need not look any further than Defendant's more recent conduct to conclude, by a preponderance of the evidence, that he presents an

unmitigable risk of flight and obstruction of justice. Specific examples of Defendant's obstructive conduct and lies to the Court and to law enforcement in connection with this prosecution and investigation include:

- *Defendant lied to Pretrial Services regarding his employment.* Following Defendant's arrest on October 22, 2023, he informed Pretrial Services that he was employed as a construction worker by Vibes Camp Enterprise for approximately five years, and that he made approximately $3,500 a month through this employment. As the Government has maintained since Defendant's initial appearance on these charges, every indication is that this was a bald-faced lie.

  Notwithstanding extensive investigation and surveillance, Defendant was never seen going to or coming from a construction site—or any other location that the Government identified as a possible employer. And, law enforcement's search of Defendant's residence failed to reveal any evidence that he is employed by Vibes Camp Enterprise, such as correspondence or pay stubs in Defendant's name, or even construction-related workwear. Furthermore, the New York Department of Labor ("NYDOL") does not have any records indicating that Defendant was employed by Vibes Camp Enterprise. In fact, NYDOL identified only one employer for Defendant since 2010: a company that employed him for no more than a quarter of 2011.

  That's not to say that there is no connection between Lazarre and his purported employer: When local police searched Defendant's vehicle in September 2021, law enforcement identified several earning statements and pay stubs issued by Vibes Camp Enterprise *in the name of one of his victims. See, e.g.,* Ex. A.[2]

- *Defendant offered to pay a confederate in return for her agreement, undisclosed to Pretrial Services, to act as a cosigner on a release bond.* Lazarre attempted to procure a cosigner in support of his application for release by paying that individual. In early December 2022 and while detained pursuant to the Court's order, Defendant texted individuals about how he "need[s] money to pay the cosigner after she gets approved" and "ppl are definitely taking there [sic] sweet time with certain things now that I have a solid cosigner we paying her and etc once she gets approved." Exs. B, C. In January 2023, Lazarre wrote

---

[2] The Government has redacted from the attached exhibits Defendant's and his victims' personally identifiable information and other sensitive material concerning his victims.

to another individual: "tell hr [an unidentified woman] lawyer will be reaching out to her to get her info and her sisters for cosigners. Once they are approved my man H going to cash them out one time and I pay them 500 a month every month until my case done." Ex. D.

The Government understands that Pretrial Services was never informed of Defendant's plan to remunerate a potential cosigner, and Pretrial Services previously indicated to the Government that it would be exceedingly unlikely to approve such a plan.

- *Defendant regularly refuses to attend court proceedings in connection with a Kings County, New York prosecution.* Defendant is presently facing New York State criminal charges for criminal possession of a weapon and other charges. *See* Kings County Supreme Court, Crim. No. 9508-22KN. In light of Defendant's federal detention, Kings County Supreme Court must issue—and has issued—writs of habeas corpus ad prosequendum to procure Defendant's presence for the State proceedings. *See* Exs. E, F, G. Notwithstanding that these *court orders* mandated his appearance, Defendant refused to be transported to State court on three occasions. It is only after the New York court's issuance of a writ that authorized the use of *force* that Defendant appeared. *See* Ex. H. [3] In short, Defendant has frustrated the State's efforts to obtain his appearance at court proceedings since December 2022, the very concern at issue before Your Honor now.

    Defendant claims that "his decision not to appear in the New York proceedings was a decision [he] reached in consultation with his counsel." Mot. at 8. The undersigned is unaware of any case law that would excuse an individual's failure to appear at a court proceeding based on the advice of counsel. [4] In any event, a failure to appear before a New York Supreme Court judge rightly is a factor that this Court should consider when determining whether there are conditions that will assure Defendant's appearance on *these* criminal charges.

---

[3]   Defendant is flatly incorrect when he asserts that "Once a writ was issued, demanding his appearance, he did appear." Mot. at 8.

[4]   Notably, at least one Circuit has found that an advice of counsel defense is unavailable where an individual fails to appear at an official proceeding when compelled to do so. *Licavoli v. United States*, 294 F.2d 207, 209 (D.C. Cir. 1961) (finding, in the context of a congressional subpoena, that "[a]dvice of counsel cannot immunize a deliberate, intentional failure to appear pursuant to a lawful subpoena lawfully served.").

- *Defendant contacted a Special Agent with the Treasury Inspector General for Tax Administration ("TIGTA") using a false alias to facilitate his crimes.* In August 2022, a bank investigator with a victim financial institution contacted TIGTA Special Agent James Papeika regarding the possibility that a customer was submitting falsified or altered United States Treasury Checks. Ex. I. Among other things, SA Papeika instructed the bank investigator to provide to the customer SA Papeika's name, title, agency name, and phone number, and to ask the customer to contact him. *Id.* According to the bank investigator, she provided the customer this information, and the customer said that he would contact SA Papeika. *Id.*

    Several days later, the customer, who represented himself to be an individual with the initials P.Z., called SA Papeika from Lazarre's cell phone number. At that time, the customer left a voicemail in which "P.Z." entreated SA Papeika to release funds to him. *Id.* SA Papeika returned the phone call and spoke with "P.Z." *Id.*

    Not only did the call come from Lazarre's cell phone, the voice, as saved on a voicemail, matches Lazarre's, and, at the time of Defendant's arrest, law enforcement found at Lazarre's residence false identification documents and credit cards in P.Z.'s name. Together, this is overwhelming evidence that Lazarre was so confident in his ability to deceive, that he was willing to lie—unabashedly and uninhibitedly—to law enforcement to accomplish his criminal aims.

This conduct makes plain Defendant's absolute disdain for—and the lengths he will go to undermine—the Court's authority and the rule of law, generally. No set of conditions can sufficiently ensure a defendant's appearance where that individual abjectly refuses to comply with them. *See United States v. Vargas*, No. 13-2044 JS, 2013 WL 3223419, at *5 (D.N.J. June 25, 2013) ("Electronic monitoring, and/or home confinement, merely impedes but does not prevent flight.").[5]

---

[5] In addition to the lies and deception listed above, there are strong indications that Defendant continues to direct others, while he remains detained, in furtherance of certain frauds. The Government concedes that any fraud that Defendant may continue to inflict on our communities is not directly relevant to the inquiry into whether release is appropriate here. *See United States v. Himler*,

8

### B. The 3142(g) Factors Weigh Decisively In Favor of Continued Detention

Each of the 3142(g) factors reinforces the finding that Defendant's pretrial detention should continue.

*First,* the nature and circumstances of the charged offenses weigh against granting Defendant's application for bail. Defendant engaged in a long-running scheme that resulted in millions of dollars in losses to his victims and several banks. Additionally, Defendant's conduct carries substantial maximum penalties, as Defendant faces a maximum term of imprisonment of 30 years on Counts One and Two and additional two-year consecutive terms on Counts Three through Five. Defendant's Guidelines sentencing range underscores the serious exposure that he faces: Given his status as a Criminal History Category VI offender and the breadth of his crimes, the Government at this time estimates that Defendant is facing a level of sentencing exposure reserved only for the most severe of offenders.

Defendant's use of and talent with aliases and stolen identities plainly presents a heightened risk of flight. Defendant has demonstrated by his conduct that he has been, and is willing to be, purposefully deceptive to achieve his aims—indeed, his entire criminal enterprise relies on his ability to deceive his

---

797 F.2d 156, 160 (3d Cir. 1986) (The Bail Reform Act "does not authorize the detention of the defendant based on danger to the community from the likelihood that he will if released commit another offense involving false identification."). However, the Government submits that any failure to stop committing crimes while behind bars is *yet another* example of Defendant's abject refusal to conform to the Court's expectations.

9

victims, such as financial institutions, through the use of fraudulent identification documents. As alleged in the Indictment, Defendant impersonated his victims using fake identification documents and names bearing his victims' personal identifying information. Defendant has proven skillful at creating or obtaining compelling counterfeit documents based on his victims' personal identifying information and then using those documents to defraud his victims of millions of dollars. His aptitude for dishonesty is evidenced by his success in his frauds.

*Second*, the weight of the evidence is overwhelming here. The Government has collected and produced a veritable trove of bank records, written communications, surveillance footage, telephone call recordings, cell phone location data, and physical evidence demonstrating Defendant's guilt. Contraband seized from Defendant's residence and vehicle include, among other things: (i) a counterfeit United States passport card bearing Defendant's photograph but coupled with a victim's personal identifying information;[6] (ii) multiple counterfeit social security cards; and (iii) dozens upon dozens of counterfeit driver's licenses—again, bearing Defendant's or his confederates' likenesses but the victims' personal identifying information—that purport to be issued by numerous states. *See* Ex. J.[7]

---

[6] The Government is also aware of an instance where Defendant submitted a United States passport (distinct from the above-reference passport card) bearing his likeness, in another victim's name, to bank personnel in an attempt to access that victim's bank account.

[7] Given Defendant's success in defrauding his victims, the Government has reason to believe that Defendant has access to a substantial amount of illicit funds.

*Third*, Defendant's broader criminal history, another factor to be considered under the history and characteristics of the defendant, demonstrates his abject contempt for the rule of law and court-imposed conditions. Defendant has led a life of crime and he has achieved the most severe possible criminal history designation: Criminal History Category VI. Defendant has at least eight felony and multiple misdemeanor convictions, including: theft (2007), possession of a forged instrument (2008), possession of stolen property (2009), two convictions for burglary (both in 2010), possession of a forged instrument (2013), illegal use of a stolen credit card (2016), identity theft/larceny (2018), identity theft (2018), and displaying a false government document (2022).

This last conviction, in particular, shows that his willingness to lie to TIGTA SA Papeika was not an aberration. During a motor vehicle stop by local law enforcement in October 2021, Defendant lied about his identity, instead providing law enforcement with a counterfeit driver's license in the name of one of his victims. In connection with this conduct, Defendant pled guilty to displaying a false government document in Hunterdon County Superior Court and was sentenced in June 2022. *See* Ex. K.[8] This is not simply an allegation,

---

    These resources could help sustain him should he decide to flee or to start up his fraudulent schemes once again.

8    Further demonstrating Lazarre's efforts at deception, he represented that he was unemployed at the time of his arrest in October 2021. Ex. K at 3. Simply put, Defendant either *continued* to lie to law enforcement in connection with his arrest for knowingly exhibiting a false identification or, as is far more likely, he lied directly to the Court at his initial appearance concerning his employment status.

rather, Defendant's affirmative lies to a law enforcement officer about his identity were established beyond a reasonable doubt.

In April 2022, Defendant, a convicted felon who is statutorily prohibited from owning a firearm (*see, e.g.*, 18 U.S.C. § 922(g)(1)), was arrested in New York City for possessing a loaded firearm and given bail pending trial on the charge. Specifically, Defendant was found in possession of a "ghost gun," an operable firearm that lacks identifying features such as a serial number and manufacturer. *See* Ex. L. That Defendant possessed a ghost gun is no coincidence—he intentionally avoided the prohibition on his gun-ownership by obtaining an untraceable firearm.

Despite being on pretrial release for the gun charge, Defendant continued his criminal behavior, further demonstrating his inability to conform to the rules of supervision. On or about May 12, 2022, approximately one month after his arrest on the gun charge, Defendant was arrested again, this time in North Arlington, New Jersey for theft-related offenses and given bail. And despite being on pretrial release for *two* separate criminal matters, Defendant continued committing the instant offenses until he was arrested in October 2022. (Indictment ¶¶ 5–27.)[9]

---

9  As yet another data point indicating Defendant's inability to follow the law, the Nutley Police Department, in Nutley, New Jersey, opened an investigation in September 2022 with respect to another of Defendant's frauds, which was committed in a manner very similar to those described in the Complaint. The criminal conduct at issue there occurred at least during June and July 2022— again, while Defendant was on pretrial release.

Alarmingly, Defendant's statements following his arrest on October 20, 2022 demonstrate his willingness to continue to break the law, and to do so without regard to whether law enforcement is aware or not. While federal law enforcement officers were executing a lawful search warrant at his residence, Defendant advised the agents that he did not have weapons in his apartment "but that he kept them close." *See* Ex. M. Furthermore, Defendant's own statements suggest that he believed that his efforts to conceal his identity would effectively hide him from detection: Following his October 20, 2022 arrest, Defendant asked how law enforcement found the apartment, as it was not in his name. *Id.* The Government urges the Court to consider the brazenness of Defendant's *own words*, in light of the deceptions he has perpetrated against the courts and law enforcement, in finding that there is no combination of conditions that can mitigate the serious risk of flight and obstruction that Defendant poses.

*Fourth*, Defendant's length of time in the community and community ties, which are also considered under the history and characteristics of the defendant, *see* 18 U.S.C. § 3142(g)(3)(A), weigh in favor of Defendant's continued detention. Undermining any contention that Defendant maintained *bona fide* ties to the community is the very nature of his conduct: Defendant leased an apartment using a deceased victim's identity. *See* Ex. N. Here, Defendant did not just use fraudulent documents to steal victims' funds—his deception extended to his very existence within the community when he chose to live under a fraudulent, assumed identity.

Further demonstrating Defendant's lack of ties to his community has been his failure to obtain a third-party willing to serve as a cosigner on a release bond. Defendant's bail package does not include a cosigner, who, as Judge Espinosa emphasized to Defendant, is "someone in the community [who will] come out and say, 'Yes, we trust – we have sufficient trust and faith in Mr. Lazarre that he's going to appear at future proceedings.'" (Ex. 1 at 13:4–6.)  It is the Government's position that no cosigner could ameliorate the risk that Defendant chooses not to appear at future proceedings. But, the fact that Defendant *has not even proposed* a cosigner—either by choice or by dint of inability to find someone willing to vouch for him—speaks to his risk of flight.

### C.  Defendant's Cited Authority is Inapposite

In support of his argument, Defendant attempts to analogize his circumstances to those at issue in *United States v. Himler*, 797 F.2d 156, 158 (3d Cir. 1986). There, defendant Harry Himler was charged by complaint with crimes involving the production of a false identification document, namely, an international driving permit. *Id.* The magistrate court, in initially granting the Government's motion to detain Himler on the grounds that he presented a serious risk of flight, concluded that several factors weighed in favor of his detention, including:  (i) the nature of defendant's present and past crimes, which also involved the use of false identification documents; (ii) "his apparent unwillingness to forego crimes of deceit"; and (iii) the "possibility that he would

14

use his aliases to flee and avoid prosecution." *Id.*[10] In the Third Circuit's opinion reversing and remanding the lower courts' decisions, the panel wrote:

> The defendant's prior record of appearing in court as required when released prior to trial is a factor in favor of his release now. Although he is unemployed, he does have family ties to the area. He is clearly capable of obtaining false identification, but there is no direct evidence to suggest that he would flee from prosecution in the future. *Compare United States v. Maull,* 773 F.2d 1479 (8th Cir.1985) (*en banc*) (defendant had previously fled from prosecution, was found to have secreted a passport, and had contacts with persons living abroad who could aid his flight), *and United States v. Vortis,* 785 F.2d 327 (D.C.Cir.1986) (defendant had a safe deposit box with 13 passports plus other forms of identification, was suspected leader of fraudulent identification and airline ticket ring, and was traveling to Liberia at time of arrest). Mere opportunity for flight is not sufficient grounds for pretrial detention. *Cf. Virgin Islands v. Leycock,* 678 F.2d 467, 469 (3d Cir.1982).

*Id.* at 156.

The Government is not here relying on some abstract propensity argument or a mere possibility that Defendant will avoid prosecution. While it is true that the scale of Defendant's crimes and criminal history serves to demonstrate that Defendant has the *means* to flee, it is his conduct that has demonstrated an *intent* and *resolve* to undermine the Court's supervisory authority. Defendant is an individual who has *in fact and recently* lied to the courts and attempted to undermine their ability to adequately assess his proposed bail conditions, he has lied to law enforcement about his identity in furtherance of the charged crimes, and he by his own admissions employed measures that he expected would keep

---

[10] While the district court determined that defendant's release on conditions would not assure the safety of the community, it made no findings regarding his risk of flight. *Id.* at 158.

him hidden from law enforcement's reach.  He has proven hostile to attempts at court-ordered supervision in his history and has *refused* to appear in state court proceedings.  And to put this in context, the penalties Defendant faces are magnitudes greater than anything he has been subject to previously.

Defendant's argument hinges on the premise that an individual can be held as a flight risk *only* where that individual has on at least one prior occasion failed to appear for a court proceeding.  As discussed, *supra* at 7–8, Defendant's conduct meets this criteria.  But, *Himler*'s command, consistent with the Bail Reform Act, is that "[j]udicial officers making risk of flight determinations are guided by the *factors* set forth in Section 3142(g)." *Id.* at 161 (emphasis added).  Undoubtedly, whether a defendant has failed to appear for court proceedings is of considerable importance in making a risk of flight determination.  However, as Judge Espinoza recognized across the three proceedings in which he considered Defendant's applications for bail, a "constellation" of factors support Defendant's continued detention.  When considering these facts holistically, Defendant's conduct is such that he presents an unmitigable risk of flight.

## IV.  CONCLUSION

Defendant has never served any significant time in prison.  Now, facing a maximum term of at least 32-years' imprisonment on the current charges, Defendant has every incentive to flee and poses a significant risk of flight.  Further, his career of fraudulent conduct, including direct lies to law enforcement and presentation of false identity documents, demonstrate not only that he is a massive flight risk but that he is willing to, and capable of,

16

obstructing justice, tampering with evidence, and threatening the integrity of judicial proceedings. He is simply a grave risk to fail to appear at future proceedings and to obstruct justice.

Simply stated, Defendant has the *motive*, the *means*, and the *resolve* to flee—this Court should deny him the *opportunity*.

Accordingly, and for the reasons set forth above, the Government respectfully requests that the Court deny Defendant's motion.

Dated:   October 19, 2023
         Trenton, New Jersey

                                    Respectfully submitted,

                                    PHILIP R. SELLINGER
                                    United States Attorney


                            By:     /s/ Matthew J. Belgiovine
                                    MATTHEW J. BELGOVINE
                                    Assistant United States Attorney

cc:   Adalgiza A. Nuñez, Assistant Federal Public Defender (via ECF)